The parties having waived oral argument before the Full Commission, the Full Commission reviewed the award based upon the record of proceedings before the Deputy Commissioner, and with reference to the errors alleged.
On September 19, 1994 counsel for the plaintiff, pursuant to Workers' Compensation Rule 701(7), filed a motion with the Full Commission to set aside and vacate the Opinion and Award by Deputy Commissioner Shuping. Plaintiff also requested a new hearing to receive additional evidence. Counsel contends that plaintiff can produce newly discovered evidence in the form of testimony by Dr. Kelley Goode Wilson.
A review of the matters before the court upon this motion revealed that plaintiff's arguments were not convincing; plaintiff's motion for a new hearing is accordingly HEREBY DENIED.
The Full Commission, upon careful consideration, has concluded that the plaintiff has failed to give adequate ground to amend the award as filed. Therefore the June 3, 1994 Opinion and Award is HEREBY AFFIRMED, and the Full Commission adopts the following findings of fact as its own.
* * * * * * * * * * *
Based upon the competent, credible evidence of record, the Full Commission makes the following
FINDINGS OF FACT
1. At the time of the hearing, plaintiff was 33-years-old. Plaintiff is right-handed. She is a high school graduate and attended Edgecombe Tech for one year, and there obtained a diploma as a child care worker. Her only other job experience is three years as a teacher's aide at an elementary school.
2. Plaintiff is currently receiving Social Security disability benefits as well as long-term disability benefits through insurance purchased at work.
3. In September of 1985 plaintiff became employed by defendant-employer as an assembly line worker primarily assembling screwdrivers at its tool manufacturing plant. This position resulted in her developing the admittedly compensable bilateral carpal tunnel syndrome on January 10, 1991 that was subject of the Industrial Commission's prior award.
4. On August 31, 1990 plaintiff sustained the admittedly compensable back injury that was subject of Industrial Commission awards of temporary total and permanent partial disability (I.C. File Number 081207) when she slipped and nearly fell at work. Plaintiff reached maximum medical improvement for this condition on April 3, 1992, at which time she retained a five percent permanent partial disability.
5. Initially, plaintiff was treated for her resulting back strain by Dr. Sylvia Mullis at Eastern Carolina Family Practice, who provided a conservative course of treatment consisting of medication, physical therapy and restricted activity. On November 29, 1991 she was referred to an orthopedic surgeon, Dr. Gene Hamilton of Greenville, because of her continuing complaints. Dr. Hamilton similarly provided a course of conservative treatment, including prescribing a lumbar corset for her to wear.
6. By January 16, 1991 plaintiff had sufficiently recovered from her back strain so as to be able to return to work; however, a week later, after returning to work, she became disabled by her admittedly compensable bilateral carpal tunnel syndrome resulting in the Industrial Commission's prior award of weekly compensation benefits commencing as of January 23, 1991.
7. Plaintiff's permanent back injury required her to return to work with certain physical restrictions. However, these restrictions did not prevent her from returning to work for defendant-employer on January 16, 1991, at which time her disability therefrom presumptively ended. Plaintiff experienced some back problems but was able to continue working until her concurrent bilateral carpal tunnel syndrome became disabling a week later. It was the disabling bilateral carpal tunnel syndrome that thereafter gave her the most problems and, in fact, as indicated by the Industrial Commission's prior award herein, had themselves become totally disabling on January 23, 1991.
8. When her bilateral carpal tunnel syndrome became disabling, Dr. Mullis referred plaintiff back to Dr. Hamilton for treatment. When Dr. Hamilton saw her on February 15, 1991 for her bilateral carpal tunnel syndrome, she was no longer experiencing any significant back pain.
9. After initially attempting a conservative course of treatment, including cortisteroid injections, Dr. Hamilton performed a surgical release of plaintiff's more severely affected dominant right hand in March of 1991. For plaintiff's less severely affected left hand, Dr. Hamilton provided a continued course of conservative treatment primarily consisting of cortisteroid injections and restricted activity. Plaintiff's condition improved such that by June 30, 1992 she had reached maximum medical improvement and/or the end of the healing period with respect to her left-sided carpal tunnel syndrome. She did not retain any permanent partial disability therefrom nor did she have any significant tingling, numbness or loss of normal sensation, and in fact she was able to use her hand in most daily activities. The condition of the left hand has not since substantially changed for the worse and, as evidenced by Dr. Hamilton's stipulated April 30, 1993 note, she retains the capacity to do left-handed work during a regular workday.
10. Although her right-sided carpal tunnel syndrome initially improved following surgery, her condition subsequently worsened when plaintiff attempted to return to work and she again became totally incapacitated thereby on or about July 6, 1992. When her symptoms did not improve with continued conservative treatment, Dr. Hamilton recommended re-exploration of the affected extremity; however, because defendant-carrier would not initially authorize the same surgery and because she sought several additional opinions to determine whether the surgery was required, plaintiff did not ultimately undergo this surgery until February of 1993 when her median nerve was re-explored by Dr. Hamilton.
11. Plaintiff's condition was much improved by surgery and she ultimately reached maximum medical improvement from her right-sided carpal tunnel syndrome and the corrective surgeries necessitated thereby on or about June 7, 1993, at which time she retained a ten (10) percent permanent-partial disability of her dominant right arm.
12. By March 5, 1993 plaintiff was no longer totally incapacitated by her right-sided carpal tunnel syndrome and by the time of Dr. Hamilton's stipulated April 30, 1993 note plaintiff had sufficiently recovered therefrom so as to be able to return to left-handed work during a regular workday.
13. As of April 24, 1993 defendant-employer had suitable full-time, left-handed work available for plaintiff which involved putting paper sleeves on small batteries. This job is a regularly available job in the premises accessory department. Despite being advised that defendant-employer had suitable employment available for her within her physical limitations, plaintiff did not inquire about the involved job nor make any attempt to perform it. This, therefore, amounted to an unjustifiable refusal to accept otherwise employment justifying suspension of her weekly compensation benefits as of May 24, 1993, the date when that employment was available and she refused to accept it.
14. Plaintiff has not since sought any alternative employment on her own and has made no effort to find any suitable work. This is not a case where plaintiff has made a reasonable but unsuccessful attempt to return to work. Further, there is no credible evidence, nor can the same be reasonably inferred under the circumstances, that it would be futile for plaintiff to attempt to obtain alternative employment because of her particular age, education, background or work experience or that the type of work she requires is not available if she would only make a reasonable attempt to look for it.
15. As a result of the chronic pain from her disabling hand injury and associated financial difficulty, plaintiff became depressed. She received psychiatric treatment from the offices of Dr. Celeste Good beginning in April of 1991; however, there is no credible medical, or other evidence, that plaintiff's depression was disabling when she unjustifiably refused to accept the suitable employment defendant-employer had available for her in May of 1993 or that it has since become disabling. Although plaintiff was seen at Dr. Good's offices more than a dozen times in 1991 for her depression, she was only seen there a couple of times in 1992 after her five day admission to the hospital for the same problems in April of 1992, and only one time in 1993. Plaintiff had a five-day psychiatric admission to the hospital beginning on April 9, 1992 because of a major episode of depression and an associated suicide attempt after her husband told her he was leaving her for another woman. However, with treatment she recovered from this episode and, as indicated by the stipulated records of Dr. Good. She was no longer depressed thereby at the time of her discharge. As those records also indicated, Dr. Good did not anticipate that the episode of depression requiring her hospitalization would interfere with her work performance for a prolonged period. This is consistent with the fact that there is no credible medical or other evidence that any depression that plaintiff still suffers was disabling in whole or in part at the time she unjustifiably refused to accept suitable employment in May of 1993 or that it has since become disabling.
* * * * * * * * * * *
Based upon foregoing findings of fact, the Full Commission makes the following
CONCLUSIONS OF LAW
1. By May 24, 1993 plaintiff had sufficiently recovered from her disabling bilateral carpal tunnel syndrome so as to be able to return to left-handed work on a full-time basis and defendant-employer then had suitable employment available for her that she unjustifiably refused to accept. This job was a regularly available job in the accessory department and was not created to accommodate her resulting limitations. N.C.G.S. § 97-32; Russell vs. Lowe's Products, 108 N.C. App. 762 (1993).
2. As a result of her bilateral carpal tunnel syndrome plaintiff does not retain any permanent-partial disability of her left hand or arms, but does retain a ten (10) percent permanent-partial disability of the dominant right arm. As a result she is entitled to 24 weeks of compensation at a rate of $187.21 per week commencing as of June 7, 1993, subject to defendants being entitled to a credit for the weekly payments of compensation that it overpaid between May 24, 1993 when plaintiff unjustifiably refused to accept suitable employment and November 2, 1993 when the Industrial Commission approved defendants' Form 24 Application to Stop Payment of Benefits. Plaintiff, therefore, is entitled to net compensation of less than a week. N.C.G.S. § 97-31(13).
* * * * * * * * * * *
Based on the foregoing, the Full Commission enters the following
AWARD
1. Defendants shall pay plaintiff, on account of her ten (10) percent permanent-partial disability of the dominant right arm, 24 weeks of compensation at a rate of $187.21 per week commencing as of June 7, 1993, subject to defendants being entitled to a credit for its overpayment of weekly compensation benefits between May 24, 1993 when plaintiff unjustifiably refused to accept suitable alternate employment and November 2, 1993 when the Industrial Commission approved its Application to Stop Payment of Benefits. Such compensation having accrued, the same shall be paid in lump sum, without commutation. As the present award is insufficient to pay a reasonable attorney fee, the same is deferred. If plaintiff's counsel does desire a fee in this matter, he should request that one be set and will have to collect the same directly from his client.
2. To the extent the same are reasonably designed to tend to effect a cure, provide needed relief from and/or lessen the period of disability associated therewith, defendants are obligated to pay all reasonable and necessary medical expenses incurred by plaintiff as a result of the bilateral carpal tunnel syndrome giving rise hereto when bills for the same are submitted on proper forms, through defendant-carrier, to the Industrial Commission for approval and are approved by the Commission.
3. Defendants shall bear the costs.
This the _____ day of __________________________, 1994.
FOR THE FULL COMMISSION
 S/ __________________ JAMES J. BOOKER COMMISSIONER
CONCURRING:
S/ __________________ DIANNE C. SELLERS COMMISSIONER
S/ __________________ THOMAS J. BOLCH COMMISSIONER
JJB:mj 10/27/94